Please call the next case, please. Case number 13-1306, People v. Adrian Unzueta. Yeah, okay. All right. All right, could we have counsel who are going to address us, introduce yourselves. May it please the Court, Your Honors, I'm Arianne Stein on behalf of Adrian Unzueta. Good morning, Your Honors, I'm Judy DeAngelis on behalf of the people of the State of Illinois, Cook County State's Attorney General. All right. Thank you very much. We'll have 15 minutes to decide and you can reserve time for rebuttal if you wish. Let me just address, before you go away, we did receive a motion to cite additional authority, I believe on the 29th, and I know that it has not yet been ruled upon. We have seen the Del Toro case and I would just ask the State, do you have any position with regard to that motion? The law is what the law is. Sure. That's fine. But in that regard, we're going to allow the matter to be argued. And I will say that I as this third district as he had earlier. All right. You may proceed. May it please the Court. In his post-conviction petition, Adrian Unzueta made a substantial showing that he received ineffective assistance of counsel where trial counsel failed to inform him of the deportation consequences of pleading guilty. In Padilla v. Kentucky, the Supreme Court held that counsel's performance is deficient where he prejudice, Padilla noted the standard from Strickland, which is that a defendant establishes prejudice where he shows, but for counsel's errors, the outcome of the proceedings would have been different. And applying that standard to the deportation context, Padilla held a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. And this was in Padilla v. Guzman-Ruiz. Do you think that that pronouncement from the Supreme Court is at odds with our Supreme Court's treatment of the issue in Hill? I don't see that people v. Hall contravenes Hill. And the state has argued for a more demanding showing of prejudice that the defendant's claim he would have rejected the plea has to be accompanied by a claim of innocence for the articulation of a plausible defense at trial. However, the cases using that standard, they have a flaw in their prejudice analysis, which is that they cite Hall, but then Hall in turn cites Hill v. Lockhart to support the standard that in certain contexts the defendant needs to allege a plausible defense. Does Del Toro mention that? I believe that Del Toro, I can't remember specifically if it does. Guzman didn't, right? Right, that is correct. Guzman and Ruiz do not mention that case. But again, I think there's a reason for that. I think it's because the Padilla court makes clear what the standard should be, that there is a rational reason for him, under the circumstances, to have rejected the plea deal. And that's what we have in this case. Was that dicta, by the way? I don't believe that that was dicta, Your Honor, because the court in Padilla specifically said what that standard is and then remanded to the Kentucky courts to make a determination based on that standard. So I don't believe that that was dicta. And even the Illinois Supreme Court has held that the standard in Padilla should be applied in People v. Hughes, which is cited in the state's brief. Well, isn't the important point of People v. Hall, it's not an immigration case? Well, it's important because it was decided before Padilla, and it's important that it's not an immigration case because, and this is again made clear in Del Toro, that in certain contexts it makes sense to look at whether a defendant has a deportation that doesn't make sense. So Del Toro explains that where a defendant, for example, has alleged ineffective assistance of counsel based on the failure to discover exculpatory evidence, that it would make sense to determine if that specific evidence would have changed the result in trial or led to a plausible defense. But in a case concerning informing a defendant about deportation consequences, a defendant might suffer prejudice regardless of the strength of his case at trial. Does it matter that the trial judge in this case advised the defendant prior to accepting the guilty plea that there was a chance he'd be deported by entering a plea of guilty, that he may be deported? Right, right. No, those admonitions were not sufficient to overcome the prejudice. And that's because deportation in this case was mandatory and not just a possibility. And the admonitions that the court gave really mirror the advice that counsel is required to give under Padilla when the immigration consequences are not clear. However, Padilla holds that where the deportation consequences are truly clear, then counsel has a duty to advise of those specific consequences. So the judge's admonitions here that there may be immigration consequences would not have been sufficient under Padilla. Well, Padilla doesn't really say that. I mean, here the judge advised the defendant of the consequences. Well, he said that he did not advise of the specific consequences, which is that there would be mandatory deportation in this case. He did say that there may be consequences, which is the same thing that happened in People v. Guzman Ruiz. And the court there found that the judge's admonitions were insufficient because there may be consequences. Well, I think that the – is it true that they found that it was insufficient or did they find that since the judge said there may be consequences, that didn't bar the ineffective assistance of counsel claim? You know, because the judge – you know, judges – the judges aren't expected to know all the immigration laws. They're supposed to advise based on the statute of limitations, but they're not supposed to have a statute that's in place that says, you know, there may be consequences. But the fact that – in Guzman, I think what we take from that is that just because the judge said there may be consequences doesn't bar the appellant from coming in and saying my lawyer was ineffective for not telling me that this was mandatory. Correct. Correct. Under Padilla, counsel would have a duty to give specific mandatory – or advice about deportation that it was mandatory. Well, let me ask you this. Are you taking the position that we should hold, as the third district did, that it's enough in a mandatory – mandatory deportation cases are different, right? And so are you asking us to hold that it's enough to just say, you know, I wouldn't have pled guilty because I have family here and I've been in the United States for X number of years and I don't want to leave? Or is there also a necessity to show that there was some chance of prevailing in the trial court? No, I don't – Is it just enough to say, you know, I don't want to leave and I want to – so I want to test the state's case? Well, I think a bare allegation that he wouldn't have pled guilty wouldn't be sufficient, but if he adds additional factors, such as the fact that he had been in the U.S. for 30 years, that he had all of his friends and family here, those kinds of considerations, then yes, that would be enough without looking at the strength of his case at trial. Because again, we're looking at whether or not – Well, how does that mesh with Hall? And I don't – I'm not going to draw a distinction that Hall wasn't an immigration case. Well, I think – What about Risley before that? Right. So, I mean, don't you think that there at least has to be something either regarding a claim of actual innocence or innocence or just articulating a plausible defense? And don't you argue that you have one here? We do. It is true we do have one. So even if the court did apply that more demanding prejudice standard, Mr. Unzueta has met that because he wasn't involved with the men taking the weapons. Would you say that I've lived here all my life and I don't want to leave? I mean, would that fit into either one of those? It does not fit into whether or not he had a claim of actual innocence or an articulation of a plausible defense. But again, People v. Hall and Risley as well both cited back to Hill v. Lockhart. And Hill really makes clear that in the context of a specific case, it might make sense to look at only whether a defendant had a plausible defense. But in the context of something like deportation, where that deficiency of counsel doesn't really have anything to do with the evidence at trial, then we don't necessarily need to look at the evidence. There could be situations where the outcome might have been different, where had counsel been aware of this mandatory deportation requirement, he could have informed the defendants of that and then perhaps they could have negotiated for a guilty plea to a trial. I'd also like to know... Well, you said that the potential other outcome could have been maybe a plea to a criminal trespass. Is that right? Right, right. So you have that kind of prototypical case where a suspect is found in an abandoned or foreclosed or under construction home and there's a defendant and he says, you know, I was just looking for a place to sleep, I was drunk, blah, blah. Right, right. That's correct, Your Honor. And that's something that can be taken into account when looking at prejudice. Something, the nature of the charge, the seriousness of the sentence, but as Del Toro explains, that's not the only factors that we have to look at, whether there was a plausible defense. It might increase the prejudice showing, but again, it's not the only factor. For these reasons, UNSWETA has made a substantial showing of counsel's ineffectiveness and requests that this court remand for further proceedings. I just have one question for you. Did the United States Supreme Court in Padilla analyze the prejudice prong of Strickland? No, the court did not analyze the prejudice prong. They remanded for the lower court to make that determination, but they did state what the prejudice standard is and that's been repeated again by the Illinois courts who deal with this issue. Thank you. Thank you, Connie. Good morning, Your Honors. May it please the Court again. Let me ask you, how do you get around Padilla? We get around Padilla by the fact that, as you stated, they did not address the prejudice prong whatsoever in that case. The fact is, we've admitted that this attorney did not, in fact, advise this defendant of the consequences of deportation. However, it must be remembered that in this case, unlike every third district case, including Del Toro, the trial court did not admonish the defendant. In Guzman-Ruiz, the trial court did admonish the defendant. However, the admonishment was not correct. The trial court did not admonish the defendant. The trial court, in fact, said they haven't placed a hold on you. They haven't arrested you for ICE, so chances are if they haven't already, they're not going to. That is the only admonishment in any third district case that was given by a trial court. That is why Del Toro, Guzman, Guzman-Ruiz are not applicable here. Back to your question regarding Padilla. They left it up to the Kentucky courts to determine whether or not there was prejudice. Prejudice had not been addressed at the lower level. They were not going to do it. In response to your Honor's question, we believe that that is dicta if there is any statement made in Padilla regarding prejudice because they did not reach the issue. The Illinois Supreme Court has reached the issue. They have said that a defendant who wants to vacate his guilty plea, he must prove either actual innocence or a plausible defense if he is arguing that his attorney was ineffective. Let me ask you a question about that. When you say that the Illinois Supreme Court has spoken to that, are you talking about Hall? Hall, Hughes. So in People v. Hall, which, by the way, preceded Padilla, correct? Yes, Your Honor, but Hughes did not. Let me ask you this. The language that the Supreme Court uses, and these are not deportation cases, is they take people who have been deported, and they take the language from Hill, and they say that the question of whether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful in trial. What does that mean in large part? It certainly doesn't mean solely. No, it does not, but I believe that... What's the room between in large part and solely? Well, it is certainly not what the defendant is claiming here, that in his affidavit all he stated was, if I had known, I would have not pled guilty, and I would have gone to trial. Without any evidence that he could have possibly been successful at trial, I know that the defense attorney had talked about possibly trying to work out a plea agreement. You have to look at this defendant. This defendant was apparently here, according to his affidavit, for 30 years. He had been arrested over 36 times. On May 19, 2003, he was arrested for criminal trespass to a residence. He had numerous DUIs, alcohol in a public way, possession of a stolen motor vehicle. There is no guarantee that the defendant would have been able to prove him that he could have had any possible reason that his attorney would have been able to argue... Well, couldn't he just say that he was arrested for criminal trespass to a residence? When was that? May 19, 2003. It's in his criminal history. Why couldn't he just say that this was a criminal trespass to a residence? What I'm saying is there's no guarantee that the state's attorney would have said, we're going to bargain with you, and we're going to allow you to plea. That's one of the points that they made. I mean, couldn't they get in front of a judge and take a bench trial and say, you know, Judge, I mean, he's already been convicted of criminal trespass to a residence here. You just did it again. Give us a criminal trespass, Judge, so my client doesn't get deported. He could have, Your Honor, but that's not the standard. Well, is the standard a plausible defense? Or is it some evidence of a plausible defense? Some evidence of a plausible defense. What's not plausible about intoxication? That's not a defense to burglary. And tell us why. Because it's a voluntary taking in of alcohol that has, under the law, no defense to the act of burglarizing a home. Well, I don't know if that's exactly a correct statement of the law. Intoxication is a defense, but it would have to be an extreme. It would have to be intoxication to the level of prior definition of insanity. Right. I mean, his mental state, he would have to be able to prove it. He didn't even state that in his affidavit. It was just in the petition. He argues it on appeal, but that, we would state, is an insufficient basis to prove prejudice. He does not argue any defense. He was caught in the house with the copper piping bundled up, and he admitted that he had taken it. The holes were in the wall. He was clearly stealing copper piping from a foreclosure. So your argument, basically, is that when someone pleads guilty because they are guilty, because they are guilty, then Padilla doesn't apply. No, Your Honor. What we're arguing is that this defendant has failed to prove prejudice, and that his statement simply that he would have gone to trial had he known, which he did know because the trial court admonished him, but had he known from his attorney that he could have been deported, that his statement alone is almost insufficient and basically would be a finding of per se prejudice that would completely obliterate the second prong of Strickland. This is not a chronic issue. We have looked at all of our relevant cases that clearly say that there are two prongs that we have to look at, and here this second prong has not been proven whatsoever. There is absolutely nothing in this record to show that this defendant Because are you saying simply because he said in his affidavit I wouldn't have pled guilty if I had been otherwise advised? Correct. He has not presented any plausible defense whatsoever. I mean, there is no plea whatsoever in this affidavit or in the petition. What do you want us to write? Do you want us to say that there has to be a showing of prejudice? In other words, there was a defense? Is that what you want us to say? Two things, Your Honor, if I can. We would like you to follow the Illinois Supreme Court's decision, which as this Court noted in People v. Dodds must be followed. We'd also like you to point out that this could be a moot point as there is no remedy here. This defendant was deported on June 4, 2013. He is not in this country anymore. What about counsel's response in the reply brief that he could seek to return? That would be up to the federal government, Your Honor, as to whether or not he could return. Why is it a moot point if he has this possibility out there? We would argue that because there is no possibility for there to be a remedy. Our position would be if you were to remand for an evidentiary hearing, who would be testifying? The defendant is not here. He can't come back into the country to testify at an evidentiary hearing if he was still deportable. Just so that we know that this is something we can speak to, is that in record, by the way, that he's been deported? Is that in our record? In my brief, we had mentioned that we believed he was deported because he was in ICE custody. I have found out from ICE that he was deported. You did argue mootness in your response brief. This situation has come up several times. There are several decisions on it now. There are at least two mandatory deportation situations. There are at least two cases out of the third district. We've got the Gutierrez case out of the first district. There's been some Rule 23s on this issue. It's certainly an issue that's going to keep coming up, right? Correct. So wouldn't an exception to the mootness doctrine apply? It would, Your Honor, but we would still like... Should we be ducking this issue? It's right there. It's squarely in front of us. It is. It's just for this defendant there is no remedy. Okay. Let me ask you this. Well, that's the definition of mootness, but there's exceptions to the mootness doctrine. Correct. But let me ask you this. Help me with one fact. It says in the briefs that the defendant admitted his participation in the burglary. Exactly what did he say to the police? Well, it was part of the factual basis. We don't have his exact words as far as I remember. And the factual basis was what? He admitted... That he admitted that the neighbors saw that the lockbox was open, the key was missing, they heard noises, they called the police, the police came in... I know he stipulated the facts, but it's also in the briefs that he admitted to the burglary. But we don't know what his words were. We do not know what his words were. I couldn't find it and that's why I was asking. No, we do not know. It was not, as far as I remember, it was not a part of the factual basis. Okay. You said you were going to I'm sorry. Del Toro, I believe, is right in line with the other third district cases that I talked about, Guzman-Ruiz, that there was no admonition or correct admonishment from the trial court. That's not what the case turns on, is it? I mean, Justice Hall just specifically says that in a mandatory deportation case that all you need to show prejudice is that you wouldn't have pled guilty because you have family here and you wouldn't want to stay here. You don't have to show that there's a plausible defense, according to the third district. According to the third district. Now, as we know, the petition for leave to appeal was granted, however... In which? In Guzman. It's pending now. It's pending, but the only issue presently before the trial court violated the defendant's constitutional rights by failure to admonish, and whether Padilla has changed the direct versus collateral consequence issue. Well, there seems to be a conflict in any event right now because of this other case in the fourth district. Would you say or no? The one written by Justice Pope? Mark Cario? Oh, no, that's quite a while ago when that decision was entered. Well, and the one thing I wanted to point out, Your Honor, you had asked whether Del Toro cited Hall. They did cite Hall, but they only cited it for if the defendant had not known, he would have insisted on going to trial. They cut the standard from Hall. They didn't take the entire language as required, as the Illinois Supreme Court requires the defendant to prove. And here, again, we would state that the defendant has not made the substantial showing that he needed to. It's just it's simply not rational for a defendant to have rejected the plea here and gone to trial. He would not have been spared deportation upon his conviction. And, again, as we stated, it's just mere speculation whether he would have been able to get any better relief if he had gone to trial. But isn't really what they're looking for is a hearing at which time the defendant can posit his claim he wouldn't have pled guilty and that he had this intoxication defense and then the attorney perhaps did advise him. We don't know that, do we? Correct. We do not know because there was no affidavit from anyone in the petition other than defendant's affidavit. Is the defendant prohibited in any way from raising this intoxication defense now that he says he may have? At a new trial? No, on appeal. Is that forfeited, that claim that he now may have a plausible defense when his affidavit filed in the petition was only that he wouldn't have gone to trial because he wanted to stay here? Well, the fact that he was intoxicated was, his claim that he was intoxicated was in the petition. It was not in the affidavit. No, it was not in the affidavit. It's in the petition. But again, you're stating whether the defendant could have an evidentiary hearing and testify back to the mootness. There is no remedy. The defendant is in Mexico. He was deported and he can't come back for an evidentiary hearing. Yes, his attorney could testify. But again, the fact that we don't really have a remedy here we would hope would be a part of your opinion in this matter. Again, the fact that no prejudice can be proven. Can we reach mootness if we don't know whether he's been deported without that, some kind of supplementation of the record? I can certainly supplement the record. Well, I'm not asking you that. I'm asking you can we reach a mootness issue when we don't really have anything in the record right now that says he's no longer here. You could only make a statement that based on our briefs which state that he was in I.C.E. That's not enough. I don't believe you. And you are right. Anything else, Counsel? No, other than the fact that we'd ask you to review our brief and the argument today and we would ask that the post-conviction courts granting of the people's motion to dismiss be affirmed. Thank you. Ms. Stein, what about the argument of the state that if we were to adopt the third district's posture in these cases that that would effectively obliterate the second prong of the Strickland test? That in every deportation case, essentially we'd have to presume prejudice? Well, Your Honor, I don't believe that in every deportation case we'd necessarily have to presume prejudice. There has to be some showing of the fact that it was rational under the circumstances for the defendant to reject the plea. So it has to be more than a bare allegation, which is what we have here. The fact that a defendant has been in the country for a significant length of time, that all of his friends and family are here. Del Toro also noted that he had no ties at all in his country of origin. And we could compare that with a defendant who maybe just came. Couldn't any defendant then meet the test by saying what you're saying now? Of course he doesn't want to leave the country. Of course he's got a family here. I mean, is that really what the cases suggest? That that's going to be something that will meet the test? Well, certainly Del Toro would suggest that and Guzman and Guzman-Ruiz suggest that as well. Again, it's more than a bare allegation and I think based on the language in Padilla that deportation is such a severe and unique consequence that that kind of standard is appropriate. But isn't that really contrary to case precedent when you're suggesting that it's just enough to say I wouldn't have pled guilty had I known this? Well, again, it has to be more than just pled guilty. There has to be these factors of having been in the United States and they can take into account what a plausible defense might be, but that wouldn't be the only factor. So again, if we have a defendant who's facing a murder charge, a really high sentence, just came to the U.S., has no ties here, that might be a situation where we wouldn't presume prejudice there. Are you saying that we should maybe have a third test? That you did agree earlier that this pleading didn't fit into either the plausible defense or innocence prong? That's correct. And I think the language of Hall doesn't necessarily say, especially when looking back to the fact that it cites Hovey Lockhart, doesn't say that in every single case where a defendant said he would have preferred to go to trial, that there has to be either an articulation of a plausible defense or a claim of actual innocence. I think it made clear that in certain contexts, those considerations are important. Do you agree with counsel that really there isn't a case like ours where there were actually admonitions that were correct? Well, People v. Guzman-Ruiz did give similar admonitions. Which may be deported? Right, correct. And that's the case that's on appeal? No, that's Guzman. Which one did the Supreme Court take? People v. Guzman. That's not this case. People v. Guzman-Ruiz, the court there did say that there may be immigration consequences. The court did go a little bit further in that case and said deportation likely won't happen, but the import of that is the same as what happened in the instant case, because Padilla makes clear that it's mandatory. Do you agree with counsel that there aren't really any cases that support intoxication as a defense to burglary? Well, I think he alleged that was true if that would be the only allegation, but it wasn't simply that he was stated that he did not have any relation with the men who were taking the wires. And given that this is a second stage case, we have to take that allegation as true. Is that in his affidavit? Are you talking about his affidavit now? In the petition, not specifically the affidavit, but the affidavit did state that everything in the petition was correct. So what would that defense be? That would be more of an actual innocence claim. Although he might have been involved in some sort of trespass possibly, he wasn't actually involved in the burglary. There was no intent to take anything. He wasn't actually taking anything. He had this history of intoxication and just happened to be in this building. But you do agree with counsel, opposing counsel, that intoxication isn't a defense to the burglary? Well, I think burglary does require a specific... There's another claim about, well, I really wasn't there to commit a theft. You're saying it fits into this innocence prong, and I can understand that. I'm asking you, though, directly. I think if the intoxication... I don't have the name of a specific case in front of me, unfortunately, but I think if the intoxication negated the intent element of burglary, the intent or knowledge that they intended to go in the building just to take out, to commit a theft, then in that case it would be a defense. I'd like to also rebut People v. Hughes, which is cited by the state, and also a Supreme Court case post-Hall. And even though the court there noted the standard in Hall, the court also acknowledged the standard in Padilla, and even stated that we recognize there may be circumstances where a defendant could prove that the deficient performance affected the outcome of the plea process in other ways. So besides just looking at whether a defendant had a defense. And the prejudice analysis that immediately followed that statement in Hughes didn't even specifically state that the defendant there did not have a plausible defense. It merely said that the defendant did not articulate any prejudice other than stating that he would not have pled guilty. So Hughes just really reiterated the standard that there can't be a bare allegation. And again, we have more than a bare allegation in this case. So this is a second stage dismissal, and so I assume that what you want us to do is to send us back for a third stage hearing. What would be accomplished at a third stage hearing? How are you going to proceed? Well, there could be theoretically even a higher showing of prejudice at that hearing where his family could come in and the petition stated that his family knew that he had this history of intoxication. They could come in to support that to make his defense more likely. Again, if there's any... If there is a defense of intoxication to the offense of burglary. Right, that's correct. But also to the fact that he specifically stated that he did not take the wire. So whether he was intoxicated or not, the petition says I was not involved in the burglary. The counsel says he's out of the country, or most likely out of the country. What about this mootness question? Well, two responses to that. In People v. Guzman-Ruiz, that was actually an appeal from a third stage hearing. In that case, the court allowed simply the defendant's affidavit at that hearing. So the defendant didn't have to be here for that specific hearing. You suggest he could gain entry legal re-entry into the United States. You don't cite the authority. Do you want to give us some authority or something for that one? Well, I don't have, unfortunately, a specific case that would allow for that, but because that he no longer would be eligible under the statute for deportation, we could presume that there might be some sort of process through immigration where he would be allowed readmission. What do you mean he would no longer be? Well, if for some reason his conviction was overturned, then he's no longer eligible under the statute for deportation. Because he was only deported, presumably based on the fact that he was mandatory for this conviction to have him deported. What was the second part of the answer to my question? You said you have two responses. Correct. I wanted to point out that the state forfeited the mootness argument because they didn't actually cite authority saying that in deportation cases this issue would be moot. And again, as Your Honor pointed out, there is an exception here where there was a likelihood that this question will recur. You know, when you say something about his conviction would be overturned, are we really jumping ahead there? Isn't this a post-conviction petition that was submitted to determine whether or not his plea could be vacated so that then everything would start all over again in terms of a trial on the merits? That's correct, Your Honor. But again, there is the possibility that eventually down the line if he were to go to trial and not be convicted, then we would have that situation. Let me ask you this. There's a third stage hearing. Would you agree that at the third stage hearing that you'd have to be able to show prejudice? There is a requirement, yes, that you would have to show prejudice. I think based on Guzman-Ruiz, that also was a third stage hearing. We have enough to show that. Would you agree that you'd have to show some type of rational basis for the vacation of this plea? Well, I think that that's what the requirement under Padilla is, that there has to be a rational showing under the circumstances that he would have rejected the plea. Thank you, Your Honor. Thank you, Counsel. Obviously an important issue and one that's at the forefront right now. I appreciate your arguments. We appreciate your briefing and your arguments. We'll take the matter under advisement. We'll take a short recess and re-form the panel. Thank you very much.